UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOSEPH F. LHOTAN,                                   :
                        Plaintiff,           :
v.                                                  :          **OPINION AND ORDER**
                                                   :
MICHAEL J. CAHILL and                               :          22 CV 7681 (VB)
ELITE LIMOUSINE SERVICE, INC.,                      :
                  Defendants.          :
------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Joseph F. Lhotan brings negligence claims against defendants Michael J. Cahill

and Elite Limousine Service, Inc. ("Elite"), in this diversity action seeking damages for personal

injuries arising from a December 19, 2018, automobile accident.  Now pending are the parties'

cross-motions for summary judgment.  (Docs. ##76, 80).

       For the reasons set forth below, plaintiff's motion is DENIED, and defendants' motion is

GRANTED IN PART and DENIED IN PART.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

I.     The Parties' Submissions

       The Court must address several procedural defects in the parties' filings before discussing

the record of the case and reaching the substance of this ruling.[1]

       First, plaintiff urges the Court to disregard defendants' motion as untimely, but this

argument is unavailing.

---

[1]    "[C]ounsel should be cognizant that these deficiencies have required the Court to parse through the record . . . .  In the future, a failure to adhere to the applicable procedural rules may not be treated with the same leniency."  Dejana Industries, Inc. v. Village of Manorhaven, 2015 WL 1275474, at *3 (E.D.N.Y. Mar. 18, 2015).

1

On July 25, 2024, the Court granted the parties leave to file cross-motions for summary judgment and ordered all briefs, oppositions, and replies to be filed on October 17, 2024. Although the Court ordered the parties to serve their moving papers by September 3, 2024, defendants served their motion ten days late, on September 13, 2024.  Plaintiff thus asks the Court to disregard defendants' motion.  However, even though defendants' motion was <u>served</u> after the deadline, it was <u>filed</u> on time.  Moreover, plaintiff neither sought an extension of time to reply nor alleges any prejudice arising from the delay.  Instead, plaintiff served a lengthy opposition two days <u>before</u> the Court's deadline to do so.  And when, as here, cross-motions present coextensive issues, "[t]he opposing party suffers little prejudice" from an untimely motion "as it cannot claim to have been unaware of or surprised by the court's consideration of those issues." <u>Camacho v. City of Buffalo</u>, 2021 WL 9079983, at *8 (W.D.N.Y. Oct. 14, 2021).[2]

Therefore, "the Court declines [plaintiff's] invitation to disregard [defendants'] cross-motion as untimely."  <u>Hahnel v. United States</u>, 782 F. Supp. 2d 20, 30 (W.D.N.Y. 2011).

Second, although both motions were accompanied by statements of undisputed material facts pursuant to Local Civil Rule 56.1, plaintiff did not file a counterstatement.  Local Rule 56.1 requires a counterstatement with "correspondingly numbered paragraph[s] admitting or denying" each purportedly undisputed fact in a 56.1 statement, with citations to admissible evidence. Local R. 56.1(b); <u>see also</u> Fed. R. Civ. P. 56(c)(1); <u>Risco v. McHugh</u>, 868 F.Supp.2d 75, 85 n.2 (S.D.N.Y. 2012).  Defendants properly filed a counterstatement.  (Doc. #81-5).

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

In lieu of a counterstatement, plaintiff improperly filed an affidavit "disagree[ing] with many points" in defendants' 56.1 statement.  (Doc. #82-10 ¶ 2).  The affidavit does not address each paragraph in defendants' 56.1 statement, and certain of the denials are either unsupported by record evidence or "improperly interject arguments and/or immaterial facts."  Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014).  However, because the Court has discretion to construe other submissions as a counterstatement, points made in plaintiff's 56.1 statement and affidavit will be construed as counterstatements to the extent they both (i) directly address facts set forth in defendants' 56.1 statement, and (ii) are supported by admissible evidence in the record.  See Little v. City of New York, 487 F. Supp. 2d 426, 432 (S.D.N.Y. 2007) (construing attorney affirmation and exhibits as a 56.1 counterstatement).  Purportedly undisputed facts that are supported by the record and uncontested by plaintiff will be deemed admitted for purposes of this motion.

Finally, neither party filed memoranda of law.  Instead, the parties improperly submitted attorney affirmations in support of, and in opposition to, the pending motions.  Dejana Industries, Inc. v. Village of Manorhaven, 2015 WL 1275474, at *3 ("[U]nder Local Civil Rule 7.1, legal argument must be set forth in a memorandum of law, not in an attorney affirmation.").  "[A]n attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight."  Little v. City of New York, 487 F. Supp. 2d at 438.  Thus, affirmations that "consist[] entirely of factual assertions and legal arguments" are "improper and inadmissible."  Dejana Industries, Inc. v. Village of Manorhaven, 2015 WL 1275474, at *2–3.

Although the Court may strike portions of the affirmations which improperly raise legal argument or assert facts, it is within the Court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules."  Hughes v. Lebron, 2016 WL

3

5107030, at *5 n.5 (S.D.N.Y. Sept. 19, 2016).  Because "the Court strongly prefers to resolve

parties' claims on the merits," and because both plaintiff and defendants have erred in the same

way, the Court will construe the legal arguments in the parties' attorney affirmations as

memoranda of law.  Id.  Factual assertions contained therein which are not premised on personal

knowledge will be disregarded.

II.    Factual Background

        Together, the parties' submissions reflect the following background.

        A.    The Collision

        On December 19, 2018, defendant Cahill was driving plaintiff home from the airport in a

vehicle owned by defendant Elite.  Cahill was rear-ended by a vehicle driven by third-party Dana

LaPorta, shortly after exiting Interstate 684 at Exit 6 onto a service road, in Katonah, New York.

LaPorta did not see Cahill's car in front of her until moments before the collision, which,

according to LaPorta, occurred after Cahill came to a stop on the service road.  The collision

between Cahill and LaPorta caused minimal damage to their cars.

        Immediately after striking Cahill's vehicle, LaPorta was also rear-ended.  LaPorta's

vehicle sustained further damage in the second collision.

        The parties dispute the cause of the collision.

        Plaintiff contends Cahill fell asleep at the wheel while exiting Interstate 684 because,

according to plaintiff, Cahill was sick and under the influence of cold and flu medication.  (Doc.

#76 ¶¶ 3, 5–8).  Plaintiff avers he had to scream at Cahill to wake him, which caused Cahill to

startle awake and suddenly slam on his breaks.  (Id. ¶¶ 5–8).  It is undisputed that Elite's policies

prohibit drivers from transporting passengers while ill.  Plaintiff suggests Cahill drove anyway because he would not get paid if he called in sick.

Defendants dispute plaintiff's contentions that Cahill was sick, under the influence of medication, asleep at the wheel, or that he suddenly slammed on his brakes.  (Doc. #81-5 ¶¶ 3, 5–8).  Instead, Cahill says he slowed down while approaching merging traffic and then lightly applied his brakes so as to avoid any impact with the car in front of him, at which point his car was rear-ended by LaPorta.  (Id. ¶¶ 6–8).  Cahill does not dispute that plaintiff screamed, but says the scream occurred after LaPorta rear-ended defendants' car.  (Id. ¶ 6).

On February 21, 2023, defendants filed a third-party complaint against LaPorta, alleging that the collision, and any subsequent damage plaintiff claimed to have sustained, "was caused solely by [LaPorta's] carelessness and negligence."  (Doc. #7 ¶¶ 4–5).  On February 12, 2024, defendants and LaPorta stipulated to a voluntary dismissal of the suit, with prejudice.  (Doc. #45).  Defendants were required to dismiss the case against LaPorta pursuant to New York General Obligations Law § 15-108(b), after learning LaPorta's liability insurer, GEICO, had reached and executed a $40,000 settlement with plaintiff.  (Doc. #83 ¶ 8; Doc. #80-12 at 157–61).[3]

### B.    Plaintiff's Injuries

On December 8, 2014, approximately four years prior to the accident, plaintiff underwent an MRI.  (Doc. #80-14 ¶ 17).  The results showed several disc bulges in plaintiff's lower back, indicating lumbar stenosis.  (Id.).

---

[3]    At her deposition, LaPorta testified plaintiff also reached an equal settlement with "car No. 3," the vehicle that rear-ended LaPorta and which was also insured by GEICO.  (Doc. #80-12 at 158–59).

Plaintiff, who was 52 years old at the time of the accident, says the collision caused him to suffer serious, chronic injuries to his neck, head, back, and hips, in addition to erectile dysfunction.  He further contends these injuries have prevented him from performing his usual daily activities, eventually causing him to retire early from his job as a probation officer.

On January 17, 2019, plaintiff saw Dr. Chris Lee, a pain and rehabilitation specialist, for treatment for his back, neck, and hip pain.  (Doc. #82-14 ("Lee Report") ¶¶ 7, 9).  After examining plaintiff, Dr. Lee determined plaintiff's range of motion was reduced.  (Id. ¶ 10).  Between March 28, 2019, and June 18, 2024, Dr. Lee administered repeated injections to plaintiff's hips and back to treat his injuries.  During this time, plaintiff underwent several additional MRIs, including a scan of his back on February 4, 2019, as well as two scans of his hips on April 8, 2019, and November 2, 2022.  (Doc. #80-14 ¶¶ 18, 20–21).  Dr. Lee reports plaintiff was recommended a "bilateral hip resurfacing procedure," which was ultimately cancelled, and "considered retiring early due to intractable pain."  (Lee Report ¶ 17).

On December 1, 2023, plaintiff was examined by Dr. Jonathan Vapnek, a urologist hired by defendants, who reviewed plaintiff's prior medical records and radiology reports.  (Doc. #80-10 ("Vapnek Report") at 1).  Dr. Vapnek's report states, "it is hard to come up with a physiological explanation for how the accident would have caused erectile dysfunction," and notes plaintiff has "been using tadalafil 20 mg" to treat his erectile dysfunction "with good success."  (Id. at 2).

On December 15, 2023, plaintiff was examined by Dr. Frank Lombardo, an orthopedist hired by defendants, who also reviewed plaintiff's prior medical records and radiology reports.  (Doc. #80-13 ("Lombardo Report") at 1–3).  Dr. Lombardo found that the MRIs taken after the collision in 2019 and 2022, showed further degeneration to plaintiff's back, as well as disc

6

bulges and herniation, in addition to impingement, tears, degeneration, cartilage loss, and tendinitis in both of plaintiff's hips. (Lombardo Report at 11–16). The degeneration to plaintiff's back and right hip across all MRIs, coupled with evidence of plaintiff's osteoarthritis prior to the collision, led Dr. Lombardo to conclude plaintiff's injuries were consistent with chronic degeneration or "repetitive constant trauma," such as plaintiff's regular martial arts practice. (Id. at 22). In addition, Dr. Lombardo explained that plaintiff's hip injuries were consistent with trauma to the sides of his hip. (Id. at 21–22).

## DISCUSSION

I. Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any declarations show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(a); see also Celotex Corp. v. Catr ett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes all facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor, on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004). However, if the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, or if he submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50; Celotex Corp. v. Catrett, 477 U.S. at 322–23. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown ex rel. Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "The mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find for" the non-moving party. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

In addition, the Court need consider only evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998). "Because hearsay evidence that fails to satisfy a hearsay exception is inadmissible at trial, the Court will not consider it in ruling on a motion for summary judgment." In re Lyman Good Dietary Supplements Lit., 2020 WL 3414927, at *2 (S.D.N.Y. Jun. 22, 2020).

When, as here, parties file cross-motions for summary judgment, "a court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Hotel Emps. & Rest. Emps.

Union, Loc. 100 of N.Y., N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't. of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002) (quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  The Court need not "enter judgment for one side or the other." Ezrasons, Inc. v. Travelers Indem. Co., 89 F.4th 388, 394 (2d Cir. 2023).  And "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it."  Silverman v. Miranda, 213 F. Supp. 3d 519, 523 (S.D.N.Y. 2016).

II.    Applicable Law

To prevail on a negligence claim under New York law, "a plaintiff must establish . . . (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof."  Aegis Ins. Servs., Inc. v. 7 World Trade Co., 737 F.3d 166, 177 (2d Cir. 2013).

In addition, pursuant to New York's No Fault Insurance Law (the "No Fault Law"), a plaintiff seeking to recover damages for personal injury arising from an automobile accident may only recover (i) non-economic damages, provided plaintiff demonstrates he sustained a serious injury because of the accident, and (ii) economic damages that exceed basic economic loss.  N.Y. Ins. Law § 5104(a); Zitny v. Mancini, 2020 WL 7630355, at *10 (S.D.N.Y. Dec. 22, 2020); Gonzalez v. Kenan Advantage Grp., Inc., 2024 WL 3445243, at *8 (S.D.N.Y. July 17, 2024).

A.    Non-Economic Damages Generally

At summary judgment, a defendant seeking to foreclose a plaintiff from recovering non-economic damages may either (i) make a prima facie showing that plaintiff has not sustained a serious injury within the meaning of the No Fault Law, Yong Qin Luo v. Mikel, 625 F.3d 772, 777 (2d Cir. 2010), or (ii) "offer[] persuasive evidence that plaintiff's alleged pain and injuries were related to a preexisting condition," Smith v. Gray, 2022 WL 1418973, at *1 (2d Cir. May 5,

2022) (summary order). Such a showing may be supported by "unsworn reports from plaintiff's physicians, but must provide evidence from [defendants'] own physicians in the form of sworn affidavits." Yong Qin Luo v. Mikel, 625 F.3d at 777.

Either way, the burden subsequently shifts to the plaintiff, who must show he (i) has sustained a serious injury or (ii) that the accident, and not a preexisting condition, is the cause of his injuries. Smith v. Gray, 2022 WL 1418973, at *1. Plaintiff's showing must be supported by "competent, non-conclusory expert evidence sufficient to support a finding not only that the alleged injury is serious . . . but also that the injury was proximately caused by the accident at issue." Carter v. Full Service, Inc., 29 A.D.3d 342, 344 (1st Dept. 2006).

B.     Serious Injury

The No Fault Law enumerates nine categories of serious injury, three of which are relevant here:  (i) "permanent consequential limitation of use of a body organ," (ii) "significant limitation of use of a body function or system," or (iii) a "non-permanent" injury, which prevents the performance of "substantially all of the material acts which constitute [the injured person's] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury," commonly referred to as a 90/180 Day injury.  N.Y. Ins. Law § 5102(d).

To demonstrate a serious injury within the meaning of the No Fault Law's "permanent consequential limitation" standard, a plaintiff must show the "injury [is] both consequential and permanent" when "[c]onsequential means important or significant." Countermine v. Galka, 189 A.D.2d 1043, 1045 (3d Dept. 1993).  Proof of total loss of function of the injured body part is not required, "only proof that it operates in some limited way or [] only with persistent pain." Id.

By contrast, "a significant limitation need not be permanent in order to constitute a serious injury." Estrella v. Geico Ins. Co., 102 A.D.3d 730, 731 (2d Dept. 2013). However, whether an injury constitutes a significant limitation "necessarily requires consideration not only of the extent or degree of limitation but of its duration as well." Id.

Both the "permanent consequential limitation" and "significant limitation" standards require a showing of "medical significance [which] involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose, and use of the body part" supported by credible medical evidence. Pow v. Armellini Indust., Inc., 2025 WL 1190774, at *4 (S.D.N.Y. Apr. 22, 2025) (citing Comba v. United States, 535 F. Supp. 3d 97, 109 (E.D.N.Y. 2021)).

On the other hand, "[t]o establish a serious injury under the 90/180 Day standard," a plaintiff must show he was unable to perform "substantially all" of the material acts which constitute his customary activities. Pow v. Armellini Indust., Inc., 2025 WL 1190774, at *6. This requires proving plaintiff "has been prevented from performing his [] usual activities to a great extent," by pointing to "objective evidence." Id. A physician's opinion, without more, is insufficient, because "any treating physician's opinion [is] dependent upon the plaintiff's subjective complaints." Id.

For any of these types of serious injury, plaintiff's position must be supported either by sworn affidavits from physicians or by showing "a search of the record as a whole demonstrates a question of genuine fact as to whether plaintiff sustained a serious injury." Yong Qin Luo v. Mikel, 625 F.3d at 777–78.

C.    <u>Preexisting Condition</u>

A defendant is entitled to summary judgment when a plaintiff cannot overcome the "defendant's claimed lack of causation," meaning plaintiff's injuries arise from a preexisting condition.  <u>Smith v. Gray</u>, 2022 WL 1418973, at *1.  When a defendant has made a <u>prima facie</u> showing that plaintiff's injuries are caused by a preexisting condition, plaintiff must provide "an explanation of the basis for concluding that the injury was caused by the accident."  <u>Valentin v. Pomilla</u>, 59 A.D.3d 184, 186 (1st Dept. 2009).  A plaintiff's failure to do so is "insufficient to support a finding that [] a causal link exists" between the injuries and the accident.  <u>Id</u>.

III.    <u>Application</u>

Plaintiff and defendants cross-moved for summary judgment on the issue of liability.  Defendants additionally moved to preclude plaintiff from recovering non-economic damages.

A.    <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff moves for summary judgment on liability against both defendants because he contends "no issue of fact exists as to [defendant Cahill] slamming on his brakes due to driver inattention and causing his vehicle to be rear-ended."  (Doc. #76 at ECF 1–2).

The Court disagrees.

To prevail on his negligence claim, plaintiff must demonstrate Cahill breached a duty of care owed to plaintiff.  Plaintiff's motion suggests Cahill owed him a duty arising from Section 1129(a) of the N.Y. Vehicle and Traffic Law, which requires drivers to maintain a safe distance between their vehicle and the vehicle in front of them.  But Section 1129(a) imposes no duty on motorists with respect to the vehicles <u>behind</u> them.  <u>See</u> N.Y. Vehicle & Traffic Law § 1129.  Further, there are no facts that could reasonably be interpreted to allege a breach of Cahill's duty

to follow other vehicles at a safe distance. Cahill's vehicle was rear-ended. His duty to leave a safe distance between his vehicle and those in front is not at issue.[4]

In any event, plaintiff is not entitled to summary judgment even assuming, arguendo, he established Cahill owed him some other, applicable duty of care; he has failed to brief, or otherwise demonstrate, that no material issues of fact exist regarding whether Cahill <u>breached</u> any duty. To warrant summary judgment in his favor, plaintiff's alleged injuries must result from a breach. Plaintiff says the collision occurred because Cahill took his eyes off the road, fell asleep at the wheel while under the influence of cold and flu medications, and suddenly slammed on his brakes after plaintiff shouted at him to wake up, thereby causing LaPorta to rear-end him. Although these factual contentions, if true, could be evidence of a breach of some duty, they are also all contested by Cahill.

It is disputed whether Cahill fell asleep at the wheel, or slammed on his brakes, or took cold medication. What's more, these disputes concern material issues of fact that go to the heart of plaintiff's negligence claim. And because plaintiff has offered no evidence other than his testimony, resolution of these disputes requires credibility determinations, which renders summary judgment inappropriate. <u>Kaytor v. Electric Boat Corp.</u>, 609 F.3d 537, 545–46 (2d Cir. 2010) ("[T]he court may not make credibility determinations or weigh the evidence. Credibility determinations . . . are jury functions, not those of a judge.").

Accordingly, plaintiff's motion for summary judgment on liability must be denied.

---

[4]    In anything, Section 1129(a) suggests LaPorta, not Cahill, was negligent because "a rear-end collision establishes a <u>prima facie</u> case of liability against the rear vehicle." <u>Krynski v. Chase</u>, 707 F. Supp. 3d 318, 322–323 (E.D.N.Y. 2009).

B.    <u>Defendants' Motion for Summary Judgment</u>

Defendants move for summary judgment (i) on liability, arguing that because Cahill was rear-ended by LaPorta, defendants cannot be negligent as a matter of law, and (ii) in the event the case proceeds to trial, to preclude plaintiff's ability to recover non-economic damages because plaintiff did not sustain serious injuries from the collision within the meaning of the No Fault Law.[5]

The Court disagrees as to defendants' liability, but agrees as to the recovery of non-economic damages.

1.    <u>Liability</u>

Defendants contend they are not liable as a matter of law, because "[u]nder New York law, a rear-end collision establishes a <u>prima</u> <u>facie</u> case of liability against the rear vehicle and imposes a duty of explanation on the operator of that vehicle."  (Doc. #80-1 ¶ 47) (citing <u>Krynski v. Chase</u>, 707 F. Supp. 2d at 322).  Defendants further assert LaPorta "was the sole proximate cause of the accident" and argue they are entitled to summary judgment because there is "nothing to suggest" defendants' liability for the collision.  (Doc. #80-1 at ECF 11; ¶ 48).[6]  In support, defendants point to LaPorta's "full[] admi[ssion] she never saw Cahill's car prior to the accident because she was focused on merging to her left."  (<u>Id</u>. ¶¶ 48–49).  Without more, this argument is unavailing.

Although New York law "establishes a <u>prima</u> <u>facie</u> case of liability against the rear vehicle" in a rear-end collision, that does not end the inquiry.  <u>Krynski v. Chase</u>, 707 F. Supp. 2d

---

[5]    Defendants do not move for summary judgment on plaintiff's claims for economic damages resulting from the collision.

[6]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

14

at 322–23 (discussing N.Y. Vehicle & Traffic Law § 1129(a)).  A rear vehicle "can overcome the presumption of negligence by providing a non-negligent explanation for the collision," such as "a sudden stop of the vehicle ahead."  Polonia v. Dunphy, 2012 WL 2376467, at *4 (S.D.N.Y. Jun. 21, 2012).

"Courts have generally held that sudden stops," if unexpected, "may rebut the presumption of negligence."  Randhawa v. Otero, 2024 WL 4150335, at *5 (S.D.N.Y. Sept. 11, 2024).  However, "[c]onclusory allegations of a sudden and unexpected stop are insufficient" to do so.  Moskovitz v. Dean, 2001 WL 1442674, at *1 (S.D.N.Y. 2001).  "By contrast, vehicle stops which are foreseeable under the prevailing traffic conditions, even if sudden . . . must be anticipated by the driver who follows."  Randhawa v. Otero, 2024 WL 4150335, at *5.  For example, "sudden stops are routinely held foreseeable in heavy traffic" while courts will find stops unexpected when they "result from unobservable road conditions or [] follow from unanticipated events like a deer jumping into the road."  Id. at *6.

Defendants insist "LaPorta was solely responsible for the accident."  (Doc. #83 ¶ 3). They argue LaPorta rear-ended Cahill's vehicle because she was inattentive and "checking [her] driver's side mirror" and therefore "did not see the car in front of [her] until . . . it had already stopped."  (Id. ¶¶ 5-6).  By contrast, plaintiff avers Cahill's negligence caused the collision because he "suddenly and without warning . . . slammed on [his] brakes" after falling asleep at the wheel.  (Doc. #82 ¶ 71).

The parties' disagreement about whether LaPorta's purported negligence, or Cahill's, was the proximate cause of the accident is a material one.  And "generally, it is for the trier of fact to determine the issue of proximate cause."  Gobin v. Delgado, 142 A.D.3d 1134, 1136 (2d Dept. 2016).  Moreover, because "the law [] recognizes that not every injury has only one cause,"

LaPorta's negligence would not, without more, preclude a finding that defendants are also liable for breach of a duty to plaintiff if Cahill stopped suddenly because he fell asleep at the wheel. Schipani v. McLeod, 541 F.3d 158, 163 (2d Cir. 2008). Indeed, "an abrupt stop by a front car . . . can support a finding of (at least) comparative fault on the part of the driver to a passenger (or driver) behind." Yi Fu Chen v. Spring Tailor, L.L.C., 2015 WL 3953532, at *7.

At bottom, as plaintiff points out, "[t]here is no video" of Cahill's stop nor of the collision; instead, defendants' position rests on "just the testimony of Mr. Lhotan[,] Ms. LaPorta," and Cahill, which require credibility determinations to parse. (Doc. #82 ¶ 89). And because "the court may not make credibility determinations" about the disputed cause of the collision, summary judgment on the issue of liability is inappropriate. Kaytor v. Electric Boat Corp., 609 F.3d at 545–46.

Accordingly, defendants' motion for summary judgment as to liability must be denied.

2.    Non-Economic Damages

Defendants contend they are entitled to summary judgment as to non-economic damages because, as a matter of law, plaintiff did not suffer a serious injury caused by the collision, within the meaning of the No Fault Law.

The Court agrees.[7]

Under the No Fault Law, the burden falls on defendants to (i) establish, prima facie, that plaintiff did not sustain a serious injury using "evidence from [their] own physicians in the form of sworn affidavits," Yong Qin Luo v. Mikel, 625 F.3d at 777, or (ii) provide "persuasive

---

[7]    Plaintiff's "claim for economic loss" survives because it "does not require [him] to have sustained a serious injury." Wilson v. Colosimo, 101 A.D.3d 1765, 1767 (4th Dept. 2012).

evidence" plaintiff's injuries were caused by a preexisting condition, <u>Smith v. Gray</u>, 2022 WL 1418973, at *1.

Because of the collision, plaintiff claims to have suffered injuries to his neck, back, and hips; erectile dysfunction; and an inability to conduct his customary daily activities, leading to an early retirement.

Defendants do not deny plaintiff suffers from some of these conditions.  They argue, however, that plaintiff has not sustained a "serious injury" under either the "permanent consequential limitation," or "significant limitation" standard of the No Fault Law because plaintiff has not provided "objective evidence of the extent" of his limitation arising from those injuries.  (Doc. #80-1 ¶ 58).[8]  Defendants contend this evidentiary deficit also precludes a finding that plaintiff was seriously injured under the 90/180 Day standard.  (<u>Id</u>. ¶ 67).

Even if plaintiff provided the requisite evidence to establish a serious injury within the meaning of the No Fault Law, defendants argue they cannot be liable for plaintiff's injuries because the injuries are "degenerative in nature, and not causally related to the accident."  (Doc. #80-1 ¶¶ 61–62, 68).  In support, defendants rely on the reports of their experts.  Dr. Lombardo, defendants' orthopedist, "concluded that [plaintiff] did not sustain a serious injury as a result of the accident" and attributes plaintiff's injuries to pre-existing conditions.  (<u>Id</u>. ¶¶ 62, 69).[9]

---

[8]    Defendants also argue plaintiff did not sustain a serious injury under the "permanent loss of use" standard.  (Doc. #80-1 ¶¶ 54–56).  But plaintiff has not pled permanent loss of use, so the Court does not address it herein.

[9]    Plaintiff contends Dr. Lombardo's report is inadmissible and should be disregarded because it is not sworn or affirmed.  Although a defendant "must provide evidence from [defendants'] own physicians in the form of sworn affidavits," <u>Yong Qin Luo v. Mikel</u>, 625 F.3d at 777, plaintiff's contention that the Lombardo report is unsworn and unaffirmed is incorrect.  Dr. Lombardo's report is signed and dated, and states that he is "a physician duly licensed to practice medicine and surgery in the State of New York and affirm[s] the truth of [his report] under the penalty of perjury pursuant to CPLR 2106."  (Lombardo Report at 24).  Such a

Likewise, defendants' urologist, Dr. Vapnek, opined that "it is hard to come up with a physiological explanation for how the accident would have caused erectile dysfunction." (Vapnek Report at 2).

a.    Plaintiff's Neck, Back, and Hip Injuries

Although Dr. Lombardo's report regarding plaintiff's neck, back, and hip injuries is not "sufficient to meet defendants' initial burden to establish a <u>prima facie</u> case that plaintiff's alleged injuries did not meet the serious injury threshold," summary judgment is nevertheless appropriate because defendants have succeeded in showing plaintiff's injuries were not caused by the collision.  <u>Toure v. Avis Rent A Car Sys.</u>, 98 N.Y.2d 345, 352 (2002).

The injuries described in Dr. Lombardo's report are not "so minor, mild or slight as to be considered insignificant."  <u>Toure v. Avis Rent A Car Sys.</u>, 98 N.Y.2d at 353.  Following the collision, plaintiff suffered reduced hip mobility, disc bulges and disc herniations, and severe back and hip pain for years.  There could be a material issue of fact regarding whether these injuries rise to the level of "serious injury" within the meaning of the No Fault Law.  However, showing serious injury alone is not enough; a plaintiff "also must show that the injury was proximately caused by the accident at issue."  <u>Smith v. Gray</u>, 2022 WL 1418973, at *1.

After examining plaintiff and plaintiff's medical records, Dr. Lombardo determined it was "completely inconceivable" that plaintiff's alleged hip injuries could be "causally related to the accident that [] occurred on December 19, 2018," because the collision occurred from the rear and plaintiff's hip injuries are consistent with "lateral impact."  (Lombardo Report at 21). Dr. Lombardo explained "[i]t is far more conceivable" that plaintiff's hip injuries are "a direct

_____

statement is sufficient to "be used in an action in New York in lieu of and with the same force and effect as an affidavit."  N.Y. CPLR § 2106.

result of his propensity for side sleeping, and his profound enjoyment of martial arts." (Id. at 22). In support, he emphasized the results of plaintiff's earlier MRIs, which "indicate[d] the presence of preexisting moderate to severe osteoarthritic changes" in plaintiff's hips "that were absolutely present prior to the alleged accident," including a "CAM impingement lesion" which "typically develops in early adolescence." (Id.).

Likewise, Dr. Lombardo concluded plaintiff's neck and lower back injuries were not "causally related to the accident," but instead, were the result of "preexisting degenerative condition[s]," such as "stenosis," "disc extrusion," "disc herniation," and "osteophyte formation." (Lombardo Report at 23). Although Dr. Lombardo acknowledged plaintiff "may have had a resultant lumbosacral spine sprain or strain" following the collision, he determined the "injury would have been appropriately treated with conservative therapy." (Id.). Dr. Lombardo further concluded that although plaintiff's MRIs reveal "significant degenerative changes" and "osteophyte formation" in plaintiff's neck, he has "not received extensive treatment" and "[i]t does not appear that the [neck] related pain that he presented with in the emergency room has continued." (Id. at 24).

Because Dr. Lombardo's report constitutes "persuasive evidence" that plaintiff's neck, back, and hip injuries are the result of preexisting degenerative conditions or otherwise were not caused by the collision, "the burden shift[s] to plaintiff to raise a genuine issue of fact as to causation." Smith v. Gray, 2022 WL 1418973, at *2.

In opposition to defendants' motion, plaintiff filed an affidavit from one of his treating physicians—Dr. Lee—addressing only plaintiff's neck, back, and hip injuries. Dr. Lee's report concludes "with a reasonable degree of medical certainty that the accident of December 19, 2018, was the direct cause of" plaintiff's injuries. (Lee Report at ¶ 35). Dr. Lee determined the

19

collision resulted in "permanent loss[]" of plaintiff's "range of motion in flexion and rotation of both hips," as well as "significant limitations" to his spine and hips, which hamper his daily activities and which "[f]urther treatment is not likely to . . . improve[]." (Id. ¶¶ 30–32). In conclusion, Dr. Lee determined plaintiff's "disability is partial, permanent and has a tendency to result in chronic localized pain." (Id. ¶ 33).

Importantly, however, Dr. Lee's report does not address Dr. Lombardo's conclusions that plaintiff's neck, back, and hip injuries were caused by preexisting degenerative conditions. Defendants aver this failure is fatal to plaintiff's causation argument. Indeed, state courts in New York have repeatedly held a plaintiff fails to raise a triable issue of fact when a defendant establishes a prima facie case that plaintiff's injuries were caused by a preexisting condition, and plaintiff's expert fails to address those findings. See Vasquez v. Almanzar, 107 A.D.3d 538, 540 (1st Dept. 2013) (granting summary judgment when plaintiff's physicians "failed to refute the finding of defendants' expert that the condition identified . . . was preexisting and not causally related to the accident"); Valentin v. Pomilla, 59 A.D.3d at 186 (granting summary judgment when plaintiff's expert "fail[ed] even to mention, let alone explain, why he ruled out degenerative changes as the cause of plaintiff's [injuries]"); Luckey v. Bauch, 17 A.D.3d 411, 411 (2d Dept. 2005) (granting summary judgment when "medical report of [plaintiff's] expert failed to adequately account" for whether plaintiff's injuries were caused by other accidents).

Plaintiff relies on Dr. Lee's conclusion that his injuries were caused by the accident (Doc. #82 ¶ 183), but that in and of itself is insufficient here. Dr. Lombardo concluded plaintiff's hip injuries "were the result of a congenital" condition, and that his back and neck injuries were caused by "pre-existing degenerative conditions." (Doc. #83 ¶ 25). Therefore, "[a]bsent an explanation of the basis for concluding that the injury was caused by the accident, as opposed to

20

other possibilities evidenced in the record, [Dr. Lee's] conclusion that plaintiff's condition is causally related to the subject accident is mere speculation, insufficient to support a finding that such a causal link exists." Valentin v. Pomilla, 59 A.D.3d at 186. Thus, Dr. Lee's failure to address Dr. Lombardo's conclusions that plaintiff's injuries are the result of preexisting, degenerative conditions, or to otherwise engage with plaintiff's prior medical history of hip and back pain, "render[s]" his conclusions "speculative." Giraldo v. Mandanici, 24 A.D.3d 419, 420 (2d Dept. 2005). As a result, plaintiff has failed to raise a triable issue of fact regarding the cause of his neck, back, and hip injuries.

b.    Plaintiff's Erectile Dysfunction

A plaintiff seeking non-economic damages pursuant to the No Fault Law "must offer objective medical evidence from which a jury could find that his [injury] was in fact caused by the accident." Cummins v. U.S. Xpress, Inc., 2009 WL 857401, at *3 (S.D.N.Y. Mar. 30, 2009) (emphasis added); see also Carter v. Full Service, Inc., 29 A.D.3d at 344. With respect to his purported erectile dysfunction, plaintiff has failed to meet this burden.

Dr. Vapnek opined the collision could not be the cause of plaintiff's erectile dysfunction. Specifically, Dr. Vapnek concluded "there is no evidence for a vascular or neurological injury associated with the accident on December 19, 2018," which could cause plaintiff's erectile dysfunction, and "no urological testing that can determine the specific cause." (Vapnek Report at 2–3). Plaintiff offered no medical evidence in response—Dr. Lee's report did not address plaintiff's erectile dysfunction. Instead, plaintiff points only to his own deposition testimony regarding a post-collision prescription for Tadalafil. (Doc. #82-11 at 176:25–177:7). This is insufficient to create an issue of fact as to causation, because it does not constitute objective medical evidence.

Moreover, even if plaintiff could establish causation, he cannot show his erectile dysfunction is a "serious injury" within the meaning of the No Fault Law.  Dr. Vapnek's report was "sufficient to meet defendants' initial burden to establish a <u>prima facie</u> case that plaintiff's alleged [erectile dysfunction] did not meet the serious injury threshold under the No Fault Law."  <u>Toure v. Avis Rent A Car Sys.</u>, 98 N.Y.2d at 352.  Indeed, Dr. Vapnek noted plaintiff had been using medication to treat his symptoms "with good success."  (Vapnek Report at 2).

Accordingly, defendants' motion for summary judgment as to non-economic damages must be granted.

## CONCLUSION

Plaintiff's motion is DENIED.

Defendants' motion is GRANTED IN PART and DENIED IN PART.

Plaintiff's personal injury claims may proceed as to economic damages only.

The Court will conduct a case management conference on <u>September 23, 2025, at 11:30 a.m.</u>, to be held in person at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case.  To be clear, counsel are directed to discuss settlement in good faith prior to that date.

The Clerk is instructed to terminate the pending motions.  (Docs. ##76, 80).

Dated:  July 22, 2025
   White Plains, NY

        SO ORDERED:

        _____
        Vincent L. Briccetti
        United States District Judge